AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br>TRISTEN ELIJAH GIROUX<br><br>*Defendant(s)* | )<br>)<br>)  Case No. 3:25-mj-1528-LLL<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __October 24, 2025__ in the county of __Duval__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 875(c) | Transmitting Threat to Kill in Interstate Commerce |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

SA Lauren Regucci - FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: October 27, 2025

_____
*Judge's signature*

City and state: Jacksonville, FL

Laura Lothman Lambert - US Magistrate Judge
*Printed name and title*

## CRIMINAL COMPLAINT AFFIDAVIT

I, Lauren Regucci, being duly sworn, depose and state:

### I. INTRODUCTION

1. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been so employed since March 2002. My assigned duties include the investigation of federal criminal offenses. I have participated in numerous investigations involving organized crime and terrorism. Based on my training and experience, I am familiar with threats transmitted in interstate commerce in violation of 18 U.S.C. § 875(c).

2. The information in this Affidavit is based on my personal knowledge as well as information, knowledge, observations, and investigations of other federal, state, and local law enforcement officers and civilians.

3. This Affidavit does not contain all information discovered during this investigation, rather only that information believed to be sufficient to support probable cause for the requested criminal complaint.

4. Based on the information in this Affidavit, I request that a criminal complaint be issued for TRISTEN ELIJAH GIROUX for a violation of 18 U.S.C. § 875.

### II. PROBABLE CAUSE

5. On or about October 24, 2025, the FBI/National Threat Operations Center (NTOC) processed an electronic tip submitted by the Director's Strategic

Information Center (DSIC), originally received by the Department of Homeland Security (DHS), regarding threats to kill Immigration and Customs Enforcement (ICE) personnel and burn down the White House purportedly made by TRISTEN ELIJAH GIROUX.

6. Specifically, on the afternoon of October 24, 2025, using phone number 951-635-6967 (the "Subject Phone Number"), GIROUX called the United States Citizenship and Immigration Services (USCIS) number and, while navigating the interactive voice recognition system (IVR), stated the following:

- "Transfer me to a customer service representative. Stupid bitch."
- "Transfer me to a representative, dumb cunt bitch."
- "I'm gonna burn down the White House."
- "I'm gonna go choke out every ICE member I see. Kill them all."

During the recording at issue, which was approximately seven minutes long, GIROUX attempted to navigate the IVR to get to a live person with whom he could discuss the issue he was having with an immigration form. He made no other threats during that call. USCIS is headquartered in Maryland with other service call centers in California, Texas, Nebraska, and Vermont.

7. The Subject Phone Number was associated with GIROUX based on publicly available information. USCIS believed that the call may have been made

2

from Broward County, Florida, based on the publicly available address information for GIROUX. Therefore, NTOC initially sent the lead to FBI Miami.

8. On or about October 24, 2025, FBI Miami identified the service provider for the Subject Phone Number as T-Mobile. FBI Miami submitted an emergency disclosure request (EDR) for subscriber information and a ping of the Subject Phone Number. T-Mobile provided pings of the phone's location, which identified the location of the phone on the evening of October 24, 2025, as an address in Jacksonville, FL (the "Jacksonville Address"). FBI Miami then transferred the lead to FBI Jacksonville. Utility information confirmed that GIROUX was associated with the Jacksonville Address.

9. On or about October 25, 2025, at approximately 1:30pm, I and Jacksonville Sheriff's Officers interviewed GIROUX at his apartment located at the Jacksonville Address. GIROUX answered the door and confirmed his identity. I asked him to step outside of the door, which he did. I identified myself as a Special Agent with the FBI and advised him that I needed to speak with him concerning a threat that had been recorded. He explained that he called USCIS to try to resolve an issue he was having with his upcoming marriage between him and his paramour, a Colombian national, for whom GIROUX was seeking a K1 visa. GIROUX had sent in the documents regarding their intended marriage, but USCIS had sent them back without explanation. GIROUX explained to me that he was running out of time to get the paperwork squared away and was extremely frustrated that he was unable to

3

get a hold of an actual representative and kept getting routed to the automated system. GIROUX admitted that he made the comments about killing ICE agents after calling USCIS multiple times, and said he made the comments in order to try and get someone's attention and to see if anyone was actually listening to what he was saying. GIROUX showed me his phone, which corroborated that he had called USCIS multiple times on October 24, 2025.

10. GIROUX advised that he did eventually speak with a representative, who was helpful, and he was able to get the situation straightened out. GIROUX was apologetic and asserted that he had no intention of harming anyone. GIROUX further stated how stupid it was that he had said those things and that he regretted it. GIROUX said that he is a supporter of President Trump. GIROUX said he has seen the ICE protests on the social media platform Tik Tok, and that they disgust him because he is supportive of ICE's efforts. GIROUX explained that he is trying to handle the immigration of his paramour in the right way, and it is so difficult, while in the meantime, people are entering the county illegally. I asked if GIROUX had any plans to harm anyone, to which GIROUX responded no. I asked whether GIROUX had any weapons, and GIROUX stated that he has a Glock 19 pistol that he registered in California when he purchased it. GIROUX denied having any explosives or any other firearms. I further admonished GIROUX, explaining that his statement to harm ICE agents is taken very seriously. GIROUX stated that he appreciated the work that the FBI and JSO conducts and again expressed his regret.

4

11. GIROUX expressed his willingness to talk with anyone else from the FBI if he needed to explain what happened.

12. GIROUX's criminal history indicates that he was found guilty of misdemeanor offenses for driving with a suspended license and a battery and noise disturbance. However, he is not a convicted felon.

### III. CONCLUSION

14. Based upon the foregoing, I submit that probable cause exists to believe that TRISTEN ELIJAH GIROUX committed the crime of sending a threatening communication in violation of 18 U.S.C. § 875(c).

_____
Lauren Regucci
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this 27th day of October 2025.

_____
LAURA LOTHMAN LAMBERT
UNITED STATES MAGISTRATE JUDGE